UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOHN GARCIA,

                 Plaintiff,

         -against-

COLLEGE OF STATEN ISLAND,
CITY UNIVERSITY OF NEW YORK,

                Defendant.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION
11 CV 2252 (KAM)(LB)**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 3 1 2012 ★

BROOKLYN OFFICE

**BLOOM, United States Magistrate Judge:**

      Plaintiff, John Garcia, brings this *pro se* employment discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *inter alia*. Defendant moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Honorable Kiyo Matsumoto referred defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. §636(b). For the following reasons, I respectfully recommend that defendant's motion to dismiss should be granted in part and denied in part.

### BACKGROUND

      Plaintiff, a male Hispanic, is employed as a campus security guard at the College of Staten Island, part of the City University of New York ("defendant"). Plaintiff alleges that defendant retaliated against him for complaining on numerous occasions of a "hostile work place" and "work place violence." (Compl. p. 4-5, ECF No. 1.[2]) Specifically, plaintiff complained that on an undisclosed date, "Officer Robertson … sexually harassed me by using

---

[1] Defendant provided plaintiff with the Local Civil Rule 12.1 notice. (ECF No. 14.)

[2] As plaintiff's complaint including the exhibits is over 200 pages long and unpaginated, defendant filed a paginated version. (Colucci Decl, Ex. B., ECF Nos. 16-1 through 16-8.) The Court therefore cites to the page numbers of defendant's enumerated copy of the complaint.

vulgar sexual language, rubbing her breast on my back, and holding me while making sexual pumping motion." (Id. at 5.) Plaintiff had to "avoid contact with [Robertson] by waiting outside to clock out." (Id. at 125.) Plaintiff complained about this incident, "including [the] fact that [Roberston] had done this to Sgt. Girard and Officer Santos" during a meeting with Director Murtha and Assistant Director Yuman (Id.) Plaintiff reiterated his concerns about the incident to an associate director of human resources, who wanted plaintiff to file a complaint. Plaintiff declined to file a complaint as he didn't trust defendant, allegedly "because the ball was drop on me." (Id.)[3]

On November 1, 2009, Officer Robertson called plaintiff a "fat ass," yelled out loud that "everyone wants her pussy," and then called plaintiff's wife a "bitch." (Id. at 4.) Plaintiff complained about this incident in an email to the president of the college. (Id. at 114.)

> In addition, plaintiff:
>
> reported violence in the workplace on March 17, 2009 see exhibit 7, 8, 9, 21, 22, in the EEOC Compl, April 16, 2009, Again on May 8, 2009, January 14, 2010 my locker was broken into, on September 8, 2010, prior to that the first warning signs began in 12/5/07 (Memo Entry 33685), 3/5/08 (Memo Entry CU20 33707-3) after my mother had passed away on 2/17/08, and again on 4/8/08 (Memo Entry CU20 33707-24), including getting my car key up. I filed an UF-61 Complaint number 10337 with NYPD 122[nd] Pct. on 11/23/11. All in Exhibit 9 of the EEOC Complaint.

(Id. at 5.) The referenced exhibits and "memo entries" are summarized below:

- Exhibit 7 is a March 17, 2009 letter to Lisa Ebert entitled "Violence in the Work Place." In this letter, plaintiff states that on March 17, 2009, Sergeant Meyers yelled at plaintiff and pointed his finger about one inch from his face when he mistakenly thought plaintiff threw keys at him. (Id., Ex. 7 p. 61.) Meyers reacted similarly on June 24, 2008 when

---

[3] It is unclear from the face of the complaint when this incident occurred. However, in a December 2009 email, plaintiff states that this incident occurred in the "summer month of August." (Id.)

plaintiff raised concerns about performing a parking "boot job" and other tasks that should not have been done due to inclimate weather. (Id. at 62.) On June 19, 2008, plaintiff requested additional training for staff "professionalism" and in 2007, he sent a fax "making my case of a 'hostile working environment.'" (Id.)[4]

- Exhibit 8 is an April 2009 email to Raphael Rosa, who appears to be a CUNY employee. The email states that defendant's "diversity and complainant (sic) officer" spoke to plaintiff in a curt and disrespectful manner and hung up on him. (Id., Ex. 8 p. 67-68.)

- Exhibit 9 is an undated latter to Assistant Director Yuman, wherein plaintiff references portions of a handwritten memo log in which plaintiff, as per defendant's policy, recorded his observations and actions during his shift. (Id., Ex. 9 p. 70.)    Plaintiff highlights the following incidents: (1) On January 9, 2006, Sergeant Meyers claimed Specialist George Mallon stated that plaintiff had problems with supervisors; plaintiff denies this, (id. at 72); on January 18, 2006, "CPL Carlino" stated that "if it were up to him, he would have me off their campus," (id. at 73); on June 18, 2006, "CPL Lombardi" came after plaintiff, kicking in a "kung fu manner," (id. at 101); on February 5, 2007, Sergeant Carlino yelled at plaintiff while he tried to take statements from complainants, (id. at 102); on December 5, 2007, plaintiff met with the Assistant Director regarding the "fairness in the selection process of hiring," (id. at 70, 76); on March 15, 2008, plaintiff met with Assistant Directors Mallon and Yuman about the difference between "ID-13 emergency over the AIR," (id. at 70, 77); on April 3, 2008, one officer had to patrol the entire quad himself, (id. at 104); and on April 8, 2008, Assistant Director Mallon yelled at plaintiff in a condescending manner, (id. at 105).

---

[4] Although referenced, the 2007 facsimile is not included in Exhibit 7.

- Exhibits 21 and 22 refer to plaintiff's November 15, 2009 email to defendant's director of human resources in which he apparently suggested a time stamp clock, asked about FMLA leave, and inquired about or objected to a policy about replacement uniforms. (Id., Ex. 21 & 22 pp. 181-186.)

- In plaintiff's EEOC charge, plaintiff alleges that he complained that Officer Santos is allowed to arrive late to work; Santos was assigned the tasks of interviewing and training new officers despite his youth and plaintiff's interest in performing those tasks; Officer Robertson harassed him but was not disciplined; Officer Genevese Clark cursed at Rosalind Cheung but Clark was not disciplined; Supervisor Charlie Carlino (a white Irish American) threw a chair at the director and broke a door frame but was not disciplined; and in August 2009, plaintiff met with a human resources associate director about the unfairness in the promotion of a white male, George Mallon, who had less education than plaintiff. (Colucci Decl., Ex. B, EEOC Charge p. 3, ECF No. 16-9.)

Plaintiff claims that in retaliation for these complaints, and for refusing to "go against Officer Robertson," (Compl. p. 4), defendant charged plaintiff with misconduct on May 27, 2010 for making threatening, abusive, disrespectful, and offensive comments towards other Campus Public Safety Officers on October 29, 2009. (Id. at 199.)[5] During the disciplinary hearing Sergeant Girard the object of plaintiff's alleged tirade, and Officers Silva and Robertson, who allegedly heard the conversation, testified. Plaintiff received a 30-day suspension without pay. Id.

---

[5] Specifically, plaintiff is alleged to have complained to Sergeant Girard that Girard kept giving plaintiff "shitty" posts, plaintiff told him to "get the fuck out of here," and plaintiff asked, "What, are you sucking Santiago's dick like the rest of them?" (Id.)

Plaintiff denies that he ever used profane or vulgar language.[6] He asserts that Robertson told him she was testifying against him "because 'of what [plaintiff] did.'" (Id. at 5.) In addition, Officer Ferlito told plaintiff that "George Mallon has been wanting to get you off this campus because you went after his job" and that Sergeant Myers told plaintiff that "everyone is coming after you" in October 2009. Finally, plaintiff asserts that Officers Robertson, Clark, and Carlino committed similar or more egregious misconduct and were not brought up on disciplinary charges. (Id. at 4-5.)

Plaintiff filed the instant complaint on May 10, 2011, using the form employment discrimination complaint available in the Clerk's Office. Plaintiff checked only the boxes for "Title VII" and "Retaliation" but wrote "Suspension of 30 days, Locker break in, Threaten physically, harassment, and intimidation" next to boxes on the form complaint, and attached several pages of factual allegations that reference the ADEA, Title IX, Section 1983, the Whistle Blower Protection Act, and ERISA. (ECF No. 1.) The complaint also attaches over 200 pages of exhibits. (ECF Nos. 1-4, 1-5, 1-6, 1-7, 1-8.) Defendant moves to dismiss the complaint in lieu of filing an answer. (ECF No. 15.) Plaintiff has opposed the motion and defendant has replied. (ECF Nos. 17, 18.)

## DISCUSSION

I.      Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.

---

[6] Plaintiff argues that he is a Jehovah witness who does not swear, that there was no documentary evidence that this event occurred, even though officers are required by defendant to keep a log of any such disturbances, and that the witnesses were located too far from the incident to have heard it. (Compl. pp. 159, 215.)

2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Iqbal, 556 U.S. at 679. The Court has the "obligation to construe *pro se* complaints liberally, even as [it] examine[s] such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (other citations omitted); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted). Plaintiff has attached various letters, emails, photographs, reports, memoranda, and statements to his complaint which may be considered to determine the instant motion. See Halebian v. Berv, 644 F.3d 122, 131 n.7 (2d Cir. 2011).[7]

II.    Plaintiff's Claims

Defendant construes plaintiff's complaint to raise the following claims: hostile work environment/sexual harassment, retaliation, and failure to promote based on race or national origin. (Mem. of Law at 1, ECF No. 15.)

---

[7] Defendant attaches the EEOC Charge and a job description to its motion to dismiss. However, the Court does not consider the job description as it is not referenced in, or relied on by plaintiff, in the complaint. See Chambers, 282 F.3d at 152-53. Although defendant provided plaintiff with notice under Local Civil Rule 12.1, the Court need not convert the instant motion to one for summary judgment in order to decide it.

A.    Hostile Work Environment

Plaintiff alleges that various supervisors and security officers subjected him to a hostile work environment in violation of Title VII. Defendant argues that the behavior at issue was neither gender-based nor sufficiently pervasive or severe. Defendant also argues that plaintiff unreasonably failed to make use of an established complaint procedure.

To state a claim for a hostile work environment, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive - that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted). "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Redd v. New York State Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

"Isolated incidents usually will not suffice to establish a hostile work environment," however, "even a single episode of harassment can establish a hostile work environment if it is sufficiently 'severe.'" Id. at 175-76 (citing Pucino v. Verizon, 618 F.3d 112, 119 (2d Cir. 2010)). In addition, "[e]ven when a plaintiff establishes that [he] was exposed to an objectively and subjectively hostile work environment, '[he] will not have a claim unless [he] can also demonstrate that the hostile work environment was caused by animus towards [him] as a result of [his] membership in a protected class.'" Bermudez v. City of New York, 783 F. Supp. 2d 560,

578 (S.D.N.Y. 2011) (quoting Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003)). "An environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes." Forts v. City of N.Y. Dep't of Corr., No. 00 Civ. 1716 (LTS)(FM), 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003) (citations omitted).

### 1.   Workplace Violence

Plaintiff alleges that he lodged numerous complaints about a "hostile work environment" and "work place violence." Specifically, plaintiff alleges that his superiors or colleagues spoke to him or yelled at him in a threatening or condescending manner, used foul language, pointed a finger in his face, falsely stated he had a problem with a supervisor, told him he should be reassigned to a different campus, came after plaintiff in a "kung fu manner," threw a chair at the director, used profanity, met with him about an "ID-13 emergency," were permitted to arrive late to work or interview other officers, and although the perpetrators are unknown, broke into his locker and keyed his car. (Compl. p. 5, Exs. 7, 8, 9, and EEOC Charge). In addition, a human resources employee hung up on plaintiff after speaking to him rudely, defendant failed to provide additional training on "professionalism," and plaintiff complained about a time stamp clock, FMLA leave, and replacement uniforms. (Id. p. 5, Exs. 7, 21, 22.) However plaintiff does not allege any facts to plausibly suggest that any of this conduct was motivated by his sex or any other protected status. Plaintiff may believe that some of this conduct was rude or uncivilized. Nonetheless, "[i]t is well established that Title VII does not set forth 'a general civility code for the American workplace,' … but rather is limited to the prevention of discrimination based on gender (or other protected characteristics)." Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 519 (S.D.N.Y. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68,

(2006)). Since these allegations of generalized "workplace violence" have no plausible relation to plaintiff's gender, plaintiff's hostile work environment/sexual harassment claim based on these incidents should be dismissed. See e.g., Zucco v. Auto Zone, Inc., 800 F. Supp. 2d 473, 476 (W.D.N.Y. 2011) (pro se plaintiff failed to state a claim for hostile work environment where she alleged that a few employees made disparaging remarks, a male used the female restroom, and she was asked for proof of hotel reservations or airline tickets to receive vacation time); Murray-Dahnir v. Lowes Corp., No. 99 Civ. 9057(LLM), 1999 WL 639699, at *4 (S.D.N.Y. Aug. 23, 1999) (plaintiff failed to state a claim for race-based hostile work environment where unlike non-African American managers, he was required to work extra hours without proper support, his supervisor ceased direct communication with him and admonished him publicly and unjustifiably on numerous occasions, and he received an illegitimate critical memo).

### 2.    Officer Robertson

However, plaintiff's claims regarding Officer Eleanor Robertson are of a different nature and should proceed. Plaintiff alleges Officer Robertson, identified by defendant as plaintiff's supervisor and superior officer, (Mem. of Law pp. 2-3), rubbed her breast on his shoulder or neck. When plaintiff told her to stop it because it was sexual harassment, Robertson stated she could do as she pleased because she is a woman and then proceeded to make "sexual pumping motions" while holding plaintiff's body. (Compl. p. 125.) Plaintiff told her to stop and alleges he "had to wait outside" to avoid Robertson.[8] (Id.)

The Second Circuit recently held that similar conduct by a supervisor could sustain a hostile work environment claim. Redd, 678 F.3d at 180-82. The Court noted that "[d]irect

---

[8] While plaintiff alleges in his complaint that he filed an EEOC charge in March 2009, the Court notes that the EEOC charge attached to defendant's motion to dismiss is dated August 19, 2010. (Compl. p. 4; EEOC Charge at pp. 1, 2.) Defendant's motion to dismiss does not argue that this claim is time-barred.

physical contact with an intimate body part constitutes one of the most severe forms of sexual harassment." Redd, 678 F.3d at 177 (quotation omitted), and that "[w]hen physical contact surpasses what (if it were consensual) might be expected between friendly co-workers[,] it becomes increasingly difficult to write the conduct off as a pedestrian annoyance." Id. (quotation omitted). Plaintiff's allegation that Robertson rubbed her breast on his neck and then held his body while mimicking sexual intercourse is sufficient to withstand defendant's motion.

"While such isolated incidents of offensive physical contact constitute[] close questions," Copantitla v. Fiskardo Estriatorio, Inc., 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011) (citation omitted), allegations involving a single or a few incidents of intentional physical contact of an overtly sexual nature are held to state a claim and have even survived motions for summary judgment. See Guzman v. Macy's Retail Holdings, Inc., No. 09 Civ. 4472(PGG), 2010 WL 1222044 (S.D.N.Y. Mar. 29, 2010) ("A female plaintiff's allegations that a male co-worker rubbed his genitals against her body, and then repeated that action after the plaintiff asked him to stop" were sufficient to defeat a motion to dismiss); see also Redd, 678 F.3d at 180-82 (reversing summary judgment where plaintiff alleged her supervisor brushed or touched her breasts three times); Copantitla, 788 F. Supp. 2d at 300-301 (denying summary judgment on a hostile work environment claim where plaintiff claimed defendant rubbed his back for about ten minutes and then grabbed him by the waist and rubbed his genitals against him for "some seconds"); Shiraldi v. AMPCO Sys. Parking, 9 F. Supp. 2d 213, 216, 218 (W.D.N.Y. 1998) (finding plaintiffs established a hostile work environment where co-worker pulled one plaintiff onto his lap and grabbed another from behind and rubbed his penis against her).[9]

---

[9] Defendant cites inapposite cases in which the facts do not include overtly sexual acts at work. (Mem. of Law at 7-8.) Instead, they involve incidental touching or advances made during off-work hours and outside of the workplace. Lewis v. North Gen. Hosp., 502 F. Supp. 2d 390, 403

Whether the incident with Robertson is sufficiently severe depends on the "totality of the circumstances viewed from the perspective of a reasonable person in plaintiff's position, considering all the circumstances including the social context in which the particular behavior occurs and is experienced by its target." Redd, 678 F.3d at 176 (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004)). Plaintiff here should be permitted the opportunity to develop evidence regarding the totality of the relevant circumstances regarding Robertson's alleged conduct. Therefore, defendant's motion to dismiss plaintiff's claim of a hostile work environment/sexual harassment based on Robertson's actions and comments[10] should be denied.

2.    Alleged Failure to Make Use of Established Complaint Procedure

Defendant asserts that under Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998), plaintiff's sexual harassment

---

(S.D.N.Y. 2007) (granting summary judgment where supervisor brushed up against plaintiff or stood so close that her breast rubbed up against him); Morris v. Ales Grp. USA Inc., No. 04 Civ. 8239(PAC)(THK), 2007 WL 1893729, at *12 (S.D.N.Y. June 29, 2007) (granting summary judgment where social context and plaintiff's response to the alleged harassment demonstrated that the hugging, hand-holding, cheek-kissing, and comments were no more than simple teasing or off hand comments); Gore v. Health Research Inst., No. 02 CV 2432(RJD)(LB), 2007 WL 1120456, at *7 (E.D.N.Y. Apr. 16, 2007) (granting summary judgment where acts were either facially sex-neutral and if overtly sexual, not supported by any competent evidence); Prince v. Cablevisions Sys. Corp., No. 04 Civ. 8151(RWS), 2005 WL 1060373, at *6-7 (S.D.N.Y. May 6, 2005) (granting motion to dismiss where plaintiff alleged generalized "sex talk" at work and "a single incident of harassment" involving an attempted kiss at a bar where she went with co-workers) Lucas v. South Nassau Communities Hosp., 54 F. Supp. 2d 141, 147 (E.D.N.Y. 1998) (granting summary judgment where plaintiff's supervisor brushed up against him or touched plaintiff with her hand). Moreover, all but one of the cases defendant cited were dismissed on summary judgment, not on a motion to dismiss.

[10] The Court notes that allegations regarding comments and other actions of Robertson appear in an email and incident report in Exhibits 12 and 25 to the complaint. The incident report is missing from defendant's enumerated copy. While many of the comments plaintiff attributes to Robertson were facially sex-neutral comments and actions, they may be relevant to the totality of the circumstances of plaintiff's hostile work environment claim. Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002) ("Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex.").

claim must be dismissed because (a) defendant has a policy against sexual harassment and reasonable procedures for addressing complaints and (b) on plaintiff's own account, he refused to utilize those procedures. Defendant provides a hyperlink to its "publicly available" sexual harassment policy and procedures. (Mem. of Law at 9, n.6.) Even assuming the Court could view this policy on this motion and that it was in effect at the time of these incidents, defendant's motion based on this argument should be denied at this stage of the litigation. Plaintiff alleges that he complained to Director Murtha, Assistant Director Yuman and Ms. Burns, an associate director of human resources, about the harassment, although as defendant points out plaintiff declined to file what appears to be a written complaint. (Compl. pp. 4, 125.) However, without additional facts, it is unclear whether plaintiff's actions complied with this policy.[11] Therefore, this portion of defendant's motion should be denied without prejudice to renewal on a motion for summary judgment. <u>Prince v. Madison Square Garden</u>, 427 F. Supp. 2d 372, 384 (S.D.N.Y.

---

[11] Defendant's sexual harassment policy provides:

> Any member of the College community may report allegations of sexual harassment to the Sexual Harassment Coordinator, a Deputy Coordinator or any member of the Awareness and Intake Committee. Employees who are covered by collective bargaining agreements may elect to use both their contractual grievance procedures, within the time limits provided in those agreements, to report allegations of sexual harassment; and to report such allegations directly to the Sexual Harassment Coordinator, a Deputy Coordinator or a member of the Sexual Harassment Awareness and Intake Committee. Members of the College community who believe they been aggrieved under the Policy are strongly encouraged to report the allegations of sexual harassment as promptly as possible. Delay in making a complaint may make it more difficult for the college to investigate the allegations.

http://www.csi.cuny.edu/diversity_and_compliance/sexual_harassment.html (last visited on June 13, 2012). The director and assistant directors whom plaintiff contacted may have been members of the "Awareness and Intake Committee" or had a duty to report to plaintiff's verbal complaint to the "Awareness and Intake Committee." <u>See id.</u> (listing various professors and a human resources employee as members of the Awareness and Intake Committee and stating that "each dean, director, department chairperson, executive officer, administrator, or other person with supervisory responsibility shall be required to report any complaint of sexual harassment to the individual or individuals designated in the procedures").

2006) (noting that the <u>Faragher/Ellerth</u> defense should "be reserved for a later date" where there were "factual questions surrounding" "the adequacy of [defendant's] investigation and the reasonableness of [plaintiff's] actions").

### B. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action." <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 110 (2d Cir. 2010) (citation omitted). At this stage, plaintiff need not establish a prima facie case, but must nonetheless "allege facts that state a plausible retaliation claim." <u>Jackson v. N.Y. State Dep't of Labor</u>, 709 F. Supp. 2d 218, 228 (S.D.N.Y. 2010). Defendant asserts that plaintiff cannot meet this pleading standard because (a) plaintiff's complaints were not protected activity and (b) given the timing of the disciplinary proceeding, which is the only adverse employment action alleged, there is no plausible causal connection between plaintiff's purported protected activity and the allegedly retaliatory act. (Mem. of Law p. 13.)

### 1. Protected Activity

"Section 704(a) of Title VII contains both an opposition clause and a participation clause, making it unlawful for an employer to retaliate against an individual 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." <u>Townsend v. Benjamin Enter., Inc.</u>, 679 F.3d 41, 48 (2d Cir. 2012) (quoting 42 U.S.C. § 2000e-3(a)). Liberally construed, plaintiff's complaint alleges three categories of purported protected activity: (1) complaints about generalized workplace violence,

(2) refusing to "go against" Robertson, and (3) complaints about (a) Robertson's inappropriate touching and comments, (b) Officer Clark cursing out Officer Leung, and (c) the promotion of a white officer, George Mallon, who was less educated than him.

"The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, 'including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.'" Matima v. Celli, 228 F.3d 68, 78-79 (2d Cir. 2000) (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)). "[I]n order to recover for retaliation for having filed such a complaint, the plaintiff need not prove that [his] underlying complaint of discrimination had merit," Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012) (citations omitted), or that "the conduct [he] opposed was in fact a violation of Title VII," Gorzynski, 596 F.3d at 111 n.8 (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)). Instead, the law only requires that plaintiff "had a good faith, reasonable belief that the underlying employment practice was unlawful" under Title VII. Id. "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (citation omitted).

### a.   *Complaints About Workplace Violence*

Here, as noted above, plaintiff's complaints about the lack of professionalism on defendant's staff, including instances of yelling, improper tone, rude words, throwing a chair, coming at plaintiff in a "kung fu" manner, coming to work late, stealing or keying cars, or hanging up on plaintiff, as well as improprieties or inconsistencies in defendant's policies regarding FMLA slips, uniforms, or a time stamp clock, "do[] not lend [themselves] to a

14

reasonable inference of unlawful discrimination" and "there was nothing in [plaintiff's] protests that could reasonably have led [defendant] to understand that [race or gender were] the nature of his objections." Krasner v. HSH Nordbank AG, 680 F. Supp. 2d at 521-22 (quoting Marks v. Nat'l Commc'n Ass'n, Inc., 72 F. Supp. 2d 322, 388 (S.D.N.Y. 1999)). Therefore, plaintiff's retaliation claim based on these complaints fails as a matter of law. See id. at 521 (granting a motion to dismiss where plaintiff alleged his supervisor "bull[ied]" him and favored others over him); Male v. Tops Mkts., LLC, No. 08-CV-6234(MAT), 2010 WL 4319769, at *2 (W.D.N.Y. Oct. 29, 2010) (granting motion to dismiss because plaintiff's complaints regarding ADA and FMLA violations were not protected activity under Title VII); Kendricks v. Westhab, Inc., 163 F. Supp. 2d 263, 271 (S.D.N.Y. 2001) (granting motion to dismiss pro se plaintiff's amended complaint because his "general protests" against defendant and "outspoken ways" were generalized complaints and were not alleged to be based on a protected status); Sullivan-Weaver v. New York Power Auth., 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000) (granting motion to dismiss because plaintiff's complaint about the hiring of a supervisor's paramour was not an unlawful practice under Title VII).

Although *pro se* plaintiffs are generally given leave to replead before dismissal of a claim, Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009), here, leave to replead would be futile. Therefore, the Court should dismiss these claims with prejudice. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). As an initial matter, the vast majority of the complaints were written and attached as exhibits. Thus, artful pleading will not change the Court's assessment that these complaints do not refer to, and could not reasonably have led the reader to believe the complaints were about, discrimination based on race, gender, or national origin. Cf. Krasner, 680 F. Supp. 2d at 521 ("An examination of [plaintiff's complaint letter]

only underscores" that plaintiff was not complaining about discrimination.). In addition, plaintiff failed to assert in his EEOC charge that he was retaliated for making the generalized "workplace violence" complaints. [12] As such, retaliation claims based on the alleged "workplace violence" would be subject to dismissal for failure to exhaust. See Roff v. Low Surgical & Med. Supply Co., No. 03-CV-3655(SJF), 2004 WL 5544995, at *5 (E.D.N.Y. May 11, 2004) (dismissing plaintiff's allegations of retaliation relating to the search of her car and personal belongings because they were not included as a basis for retaliation in the EEOC charge or reasonably related thereto).[13]

   b.   *Refusal to Participate in Internal or EEOC investigation*

Plaintiff alleges that he was "called into a meeting by Director Murtha and he asked me to go against Officer Robertson." (Compl. p. 4.) Plaintiff states that "[a]fter I refused to cooperate in this matter because it could have a[n] adverse outcome the Director got Sgt. Girard, Officer Eddie Silver (sic), and Officer Robertson to go after me." (Id.) Refusing to "go against" Robertson is not an act of opposing unlawful practices or participating in EEOC proceedings.

---

[12] Plaintiff's EEOC charge also alleges that he was retaliated against for complaining about preferential treatment of Santos due to his age, and defendant's failure to discipline Robertson for harassing him, Clark for mistreating Leung, and Carlino for throwing a chair during an argument with Director Murtha. (EEOC Charge p. 3.) Only plaintiff's complaints regarding Robertson and Clark's promotion after she cursed at Leung, who had filed a complaint against Clark, (Compl. p. 209), can be considered complaints about an unlawful employment practice under Title VII. Cf. Matima, 228 F.3d at 78-79 (expressing support for co-worker who complained about discrimination is protected activity). A complaint about an employee's mistreatment of an employer is not a complaint about employer's unlawful employment practice, 42 U.S.C. § 2000e-2(a)(1), and complaints about violations of other federal statutes are not protected activity under Title VII, see Male, 2010 WL 4319769, at *2.

[13] Although defendant does not argue that plaintiff's complaint should be dismissed for his failure to exhaust administrative remedies, the Court sees no reason why defendant would not be able to include this affirmative defense in its answer. Cf. Belgrave v. Pena, 254 F.3d 384, 387 (2d Cir. 2001) (district court acted within its discretion to permit amendment of answer to include failure to exhaust defense where the amendment "occurred before trial, did not require additional discovery, and was not premised on bad faith").

Cf. Townsend, 679 F.3d at 51-52 (protection against retaliation only applies to opposing unlawful practices or participating in formal EEOC proceedings, not an employer's internal investigation). Therefore, any retaliation claim based on plaintiff's refusal to "go against" Robertson, cannot withstand the instant motion and should be dismissed.

### 2.    Causal Connection

As to the remaining complaints, plaintiff's complaint about Mallon's promotion, Clark's mistreatment of Leung and subsequent promotion, and Robertson's harassment, defendant argues that the disciplinary charges and proceeding could not be causally related given the passage of time between the complaints and the alleged adverse employment action.    In August 2009, plaintiff complained to defendant's human resources associate director regarding Mallon's unfair promotion and Clark's promotion after mistreating Leung; at some time prior to December 2009, he complained to Assistant Director Yuman and Director Murtha regarding Robertson's sexual harassment; and in October 2009, he complained to Yuman and Murtha regarding Robertson calling his wife a "bitch."  (EEOC Charge at 3, Compl. pp. 114, 125, 209.)  Defendant brought plaintiff up on disciplinary charges in May 2010.

A plaintiff may establish a causal connection between a protected activity and an adverse employment action either "directly through evidence of retaliatory animus" or "indirectly with circumstantial evidence."  Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). Defendant is correct that the passage of time between the complaints and disciplinary charges is too long to raise an inference of retaliation.  See Garrett v. Garden City Hotel, Inc., No 05-CV-0962(JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (collecting cases and stating "district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an

inference of causation"). However, temporal proximity is only one way to establish a plausible claim of retaliation. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)); accord Rodriguez v. City of New York, 644 F. Supp. 2d 168, 192 (E.D.N.Y. 2008).

Here, plaintiff pleads proof of causation both indirectly and directly. First, he alleges that he was selectively disciplined. Clark, Robertson, and Carlino engaged in similar or worse conduct and were not disciplined. In addition, he claims that although the incident alleged occurred in October 2009, he was not charged until May 2010, after he and George Serrano met with human resources in December 2009 to state that they believed the write-up was retaliatory. (Compl. p. 164.) Second, he asserts facts regarding retaliatory animus. He states Robertson told plaintiff that she testified against him because of "what [he] did." (Id. at 5.) In addition, Officer Sal Ferlito "came over to [plaintiff] at the basement and said 'I gonna tell you something but if you repeat it I'm going to deny it – George Mallon has been wanting to get you off this campus because you went after his job' (About seven days ago)." (Id. at 217.) He was also "told that in the Supervisor meeting on (sic) to watch out for John J. Garcia" and Sergeant Meyers called plaintiff after an October 2009 supervisor meeting and warned him that "everyone is coming after you." (Id. at 210, 215.)

These facts are sufficient at the pleading stage to allege a plausible causal connection. Cf. DeCinto v. Westchester Cnty. Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987) (evidence that

fellow employees were "not disciplined for engaging in identical behavior" was indirect evidence of a causal connection between the protected activity and retaliation that were not proximate in time); Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 437-38 (E.D.N.Y. 2009) (supervisor's comments regarding firing plaintiff instead of her alleged harasser because the relationship between the two interfered with work constituted circumstantial evidence of retaliation). Therefore, defendant's motion to dismiss the retaliation claims based on plaintiff's complaints regarding Robertson's and Clark's behavior and Mallon's promotion should be denied.

####    C.    Failure to Promote

Defendant asserts that "[a]lthough the complaint makes no mention of it, plaintiff's EEOC Charge contends that in 2009 he applied for the position of Assistant Director of Public Safety, but that the job was given to a "white male, George Mallon, who has less education than me." (Mem. of Law at 3 (quoting EEOC Charge p. 3.)). Defendant argues plaintiff lacked the minimum qualifications for the position. (Mem. of Law at 4; Colucci Decl., Ex. C, Job Description, ECF No. 16-9.) However, plaintiff's EEOC Charge does not state that Mallon was selected for a promotion in 2009. It states "in August 2009, I also met with the Respondent's HR Associate Director about the unfairness in the selection of the Assistant Director position ... . I complained that they selected a white male, George Mallon, who has less education than me." (EEOC Charge p. 3.) It is clear from the exhibits to the complaint that Mallon was promoted in 2007. (Compl. p. 23, 207.) Plaintiff's complaint does not include a separate allegation that the 2007 failure to promote was discrimination and plaintiff did not check the box on the form complaint to allege "failure to promote." (Compl. p. 3, *et seq.*) The complaint only alleges that defendant retaliated against him in 2010 for complaining in 2009 about the promotion of George

19

Mallon, a white male officer to an Assistant Director position in 2007. (EEOC Charge at p. 3; Compl. p. 207.)[14] While the Court is "obligated to draw the most favorable inferences that [plaintiff's] complaint supports, [is] cannot invent factual allegations that he has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Therefore, defendant's motion to dismiss this potential claim should be denied as moot.[15]

### D.    Other Claims

Plaintiff's complaint should also be construed to raise a disparate treatment claim under Title VII. Plaintiff alleges that he was charged with misconduct, and ultimately received a 30-day suspension without pay, for allegedly using profanity but that other employees who committed the same offense or more serious offenses were not disciplined. (Compl. p. 6; EEOC Charge p. 4.)[16] Liberally construed, these allegations raise a claim that plaintiff was unfairly disciplined due to his race, national origin, or sex. See generally Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000) (a plaintiff may make a showing of disparate treatment if he can show that he was treated less favorably than a similarly situated employee outside his protected group

---

[14] As noted above, I recommend that this retaliation claim should survive the instant motion.

[15] The Court also notes that a claim based on the 2007 promotion would be time-barred. "An employment discrimination claim must be filed with [the] EEOC within 300 days of the alleged discrimination." Dimps v. New York State Office of Mental Health, 777 F. Supp. 2d 659, 662 (S.D.N.Y. 2011) (citation omitted). As plaintiff's 2010 EEOC charge was not filed within 300 days of December 2007, a failure to promote claim based on these facts would be time-barred. Thus, even if plaintiff were permitted to replead to add claim based on the 2007 denial of a promotion, it would be dismissed. The Court also notes that plaintiff's "rebuttal" filed with the EEOC alleges that "[i]n March 2009, I received another letter for position I applied for because in this position one could have a GED with a combination of ... supervisor experience. See Exhibit 2." (Compl. p. 23.) "Exhibit 2" is a letter informing plaintiff that "review of application will begin on 3/11/09." (Compl. p. 39.) The complaint does not link this application or its review to discrimination. In addition, as the EEOC charge failed to include this allegation, plaintiff failed to exhaust his administrative remedies regarding any claim arising from these facts. See supra at 16.

[16] Plaintiff is apparently a different race or sex than these officers, except for Officer Santos. Plaintiff alleges that Santos was given preferential treatment because of his youth. (EEOC Charge p. 3.)

and that (1) he and his comparators were "subject to the same workplace standards" and (2) "the conduct for which the employer imposed discipline was of comparable seriousness"); accord Ruiz v. Cnty. of Rockland, 609 F.3d 486 (2d Cir. 2010). As defendant did not move against this claim, it should proceed. Similarly, defendant inexplicably failed to move against plaintiff's claims based on Title IX, the ADEA, Section 1983, the Whistleblower Protection Act and ERISA. Therefore to the extent that plaintiff's claims under these statutes can be understood, they should proceed.

## CONCLUSION

Accordingly, I respectfully recommend that defendant's motion to dismiss should be granted in part and denied in part. Plaintiff's hostile work environment/sexual harassment claim should be dismissed except as it relates to Robertson's actions and comments. Plaintiff's retaliation claims should be dismissed except those based on plaintiff's complaints of Robertson's harassment, Mallon's promotion, and Clark's misconduct regarding Leung. Defendant's motion to dismiss a 2007 failure to promote claim should be denied as moot. Finally, as defendant failed to move against the Title VII disparate treatment claim as well as any Title IX, ADEA, Section 1983, Whistle Blower Protection Act, and ERISA claims, these claims should proceed.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

S/Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: July 31, 2012
     Brooklyn, New York